NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT
PRECEDENTIAL AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

AMBERWOOD DEVELOPMENT, INC., an Arizona corporation doing
business as Amberwood Homes; WINSTON CASA, LLC, an Arizona
corporation; SUMMERSET MARKETING ENTERPRISES, INC., an
Arizona corporation doing business as Amberwood Homes,
*Third Party Plaintiffs/Appellees/Cross-Appellants*,

*v.*

SWANN'S GRADING, INC., an Arizona corporation,
*Third Party Defendant/Appellant/Cross-Appellee*.

No. 1 CA-CV 15-0786
FILED 2-23-2017

Appeal from the Superior Court in Maricopa County
No. CV2008-012745
The Honorable Randall H. Warner, Judge

**AFFIRMED**

COUNSEL

Lee, Hernandez, Landrum, Garofalo, Phoenix
By Jennifer E. Mullen, Barrett N. Lindsey
*Counsel for Third Party Plaintiffs/Appellees/Cross-Appellants*

Tyson & Mendes, LLP, Phoenix
By Lynn M. Allen
*Counsel for Third Party Defendant/Appellant/Cross-Appellee*

---

## MEMORANDUM DECISION

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Jon W. Thompson joined.

---

**W I N T H R O P**, Judge:

¶1          Appellant Swann's Grading, Inc. ("Swann's") challenges the trial court's judgment obligating it to indemnify Appellee Amberwood Development, Inc. ("Amberwood") for damages stemming from a series of construction defect claims.  Swann's also challenges the trial court's defense costs and attorneys' fees awards.  We affirm for the reasons set forth below.

### FACTS AND PROCEDURAL HISTORY

¶2          Amberwood served as general contractor on a housing development in Chandler.  Swann's subcontracted to provide rough and final grading services in the development.

¶3          Eighteen homeowners sued Amberwood after construction was completed, alleging numerous defects.   As a result, Amberwood sought indemnification from its subcontractors, including Swann's, under the terms of their subcontracts.  Swann's subcontract provided as follows:

> INDEMNITY:  Subcontractor agrees to and does hereby hold Contractor harmless from any and all claims, actions, damages, costs or Attorney's fees arising out of the acts or omissions of Subcontractor, its employees, agents or suppliers with regard to the performance or omission of any of Subcontractor's duties and obligations under this contract. The indemnity extends to any claims asserted by any subsequent property owner alleging improper or defective workmanship or materials in any work or material done or provided by Subcontractor.

> To the fullest extent permitted by law, Subcontractor shall defend and indemnify and hold harmless, Contractor and their agents and employees from claims, demands, costs, attorney fees, causes of action and liabilities of every kind whatsoever arising out of or in connection with Subcontractor's work performed for Contractor.  This defense

and indemnity shall extend to claims occurring after this agreement is terminated as well as while it is in force. The defense and indemnity shall apply regardless of any active and/or passive negligent act or omission of the Contractor, Architect, or their agents or employees, but Subcontractor shall not be obligated to indemnify any party for claims arising from the sole negligence or willful misconduct of the Contractor or its agent or employees. The defense and indemnity set forth in this section shall not be limited by any insurance requirements, or by any provision of this Agreement. All work done at a site or in preparing or delivering materials or equipment to the site shall be at the sole risk of Subcontractor until the work is accepted by Contractor.

Ten of the eighteen homeowners arbitrated their claims, resulting in a $1,750,000 award against Amberwood. Swann's provided Amberwood a defense but did not otherwise participate in the arbitration.

¶4         Swann's answered Amberwood's third-party complaint shortly after the arbitration matter concluded. The remaining eight homeowners eventually settled with Amberwood for $723,900. Amberwood then settled its third-party indemnity claims against all subcontractors except Swann's for $479,400.

¶5         Both Swann's and Amberwood moved for partial summary judgment on the scope of Swann's indemnity obligations. The trial court granted Amberwood's motion and denied Swann's motion, finding that Swann's was obligated to defend and indemnify Amberwood for claims related to Swann's work and that, to recover on the indemnity claim, Amberwood would have to show that its settlements were "reasonable and prudent and that the allocated amount arose out of or was in connection with Swann's work."

¶6         Before proceeding to bench trial, the parties stipulated that Amberwood's settlements with all eighteen homeowners were reasonable. At trial, Amberwood offered undisputed testimony that Swann's had provided a defense throughout the arbitration matter but contributed no indemnification. Amberwood also presented expert witness testimony that approximately 70 percent of the litigation settlement and 81 percent of the arbitration award were at least partially attributable to Swann's work. Amberwood's expert also prepared a list of repair costs that, in his opinion, stemmed at least partially from Swann's work.

¶7        Swann's objected to both the expert's testimony and the list as having been untimely disclosed. The trial court overruled Swann's objection to the list and admitted it into evidence. Swann's also offered testimony from its own geotechnical expert, who opined that Swann's did not cause any of the damages for which Amberwood sought indemnification.

¶8        The trial court found Swann's was obligated to indemnify Amberwood for 70.6 percent of the litigation settlements and 72.7 percent of the arbitration award. The trial court then granted Swann's an offset of the full amount Amberwood received in settlement from the other subcontractors. The trial court also stated that, to the extent Swann's was liable for more than its fair share of Amberwood's losses, "its remedy is equitable contribution." The trial court also awarded Amberwood defense costs, attorneys' fees, and court costs of $179,570.63, $121,074.92, and $14,559.25, respectively.

¶9        Following the entry of final judgment, Swann's moved for a new trial or to alter or amend the judgment under Ariz. R. Civ. P. 59(a) and (l), arguing that (1) the trial court erred in finding Swann's could pursue the other subcontractors for equitable contribution; (2) Swann's was only severally liable for Amberwood's damages; (3) Amberwood's settlements with the other subcontractors were unreasonable; and (4) Amberwood's attorneys' fee claim should have been apportioned among Swann's and the settling subcontractors. The trial court denied Swann's motion. Swann's timely appealed, and Amberwood timely cross-appealed, challenging the offset. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1) (2016).[1]

## ANALYSIS

*I.        Amberwood Was Not Required to Prove Swann's Negligence to Recover.*

¶10        Swann's first argues that Amberwood could recover only if it showed under the indemnity provision that Swann's was negligent in performing its work. We review the indemnity provision *de novo*. *MT Builders, L.L.C. v. Fisher Roofing, Inc.*, 219 Ariz. 297, 302, ¶ 10, 197 P.3d 758, 763 (App. 2008). We must give effect to the provision as written; if its terms

_____

[1]        We cite the current version of applicable statutes when no revisions material to this decision have since occurred.

are clear and unambiguous, they are conclusive. *Goodman v. Newzona Inv. Co.*, 101 Ariz. 470, 472, 421 P.2d 318, 320 (1966).

¶11 Swann's directs us to two out-of-state cases to support its argument. In *Heppler v. J.M. Peters Co.*, 87 Cal. Rptr. 2d 497 (Cal. Ct. App. 1999), the California Court of Appeals found an indemnity clause requiring the subcontractor to "indemnify and save [Peters] harmless against all claims for damages to persons or to property growing out of the execution of the work, and at his own expense to defend any suit or action brought against [Peters] founded upon the claim of such damage" only applied to claims in which the subcontractor was negligent. *Id.* at 509-12. Here, though, the indemnification provision covered claims "arising out of or in connection with" Swann's work, not just claims "growing out of *the execution* of the work." *Id.* at 509 (emphasis added).

¶12 Swann's also cites *Reyburn Lawn & Landscape Designers, Inc. v. Plaster Dev. Co.*, 255 P.3d 268 (Nev. 2011). There, the Nevada Supreme Court interpreted a subcontract requiring indemnification for claims "arising directly or indirectly out of the obligation herein undertaken or out of the obligations conducted by Subcontractor, save and except claims or litigation arising through the sole negligence or sole willful misconduct of Contractor" as only covering claims in which Reyburn was at least partially negligent. *Id.* at 272, 275. *Reyburn* is not persuasive here because Nevada follows the "express negligence doctrine" under which "parties are free to contractually agree to indemnify another for its own negligence" but "an express or explicit reference to the indemnitee's own negligence is required." *Id.* at 274 (quoting *George L. Brown Ins. v. Star Ins. Co.*, 237 P.3d 92, 97 (Nev. 2010)). Arizona does not follow this doctrine. *See, e.g.*, *Washington Elementary Sch. Dist. No. 6 v. Baglino Corp.*, 169 Ariz. 58, 61, 817 P.2d 3, 6 (1991) ("There is . . . no requirement that the term negligence actually be used, or that specific reference be made to liability arising out of the indemnitee's negligence."). The absence of any express reference to Amberwood's own negligence thus does not limit Swann's indemnity obligations to claims arising out of its own negligence.

¶13 We believe *Cont'l Heller Corp. v. Amtech Mech. Servs., Inc.*, 61 Cal. Rptr. 2d 668 (Cal. Ct. App. 1997) is closer to the mark. There, the California Court of Appeals determined that subcontract language requiring indemnification for losses that "arise[] out of or [are] in any way connected with the performance of work under this Subcontract" did not require the indemnitee to show the subcontractor was either negligent or at fault. *Id.* at 670. The court instead found that "[t]he language of the agreement leaves no doubt the parties intended Amtech should indemnify

Continental irrespective of whether Continental's loss arose by reason of Amtech's negligence or for any other reason except for the sole negligence or willful misconduct of Continental." *Id.* at 671.

**¶14** Swann's subcontract contains nearly the same language; its indemnity obligation reaches any claim "arising out of or in connection with [Swann's] work performed for [Amberwood] . . . regardless of any active and/or passive negligent act or omission of [Amberwood]" and only excepts claims arising out of Amberwood's sole negligence or willful misconduct. Accordingly, the trial court correctly held that Amberwood did not have to show Swann's was negligent to recover.

*II.    Amberwood Was Not Required to Prove Causation to Recover.*

**¶15** Swann's next argues it only was obligated to indemnify Amberwood for damages "that ha[d] a direct causal connection to Swann's acts or omissions," citing *MT Builders*. But *MT Builders* is distinguishable because the subcontract at issue there required indemnity for damages "caused in whole or in part by *any negligent act or omission of the Subcontractor* or anyone directly or indirectly employed by him or anyone for whose acts he may be liable." 219 Ariz. at 303-04, ¶ 16, 197 P.3d at 764-65 (emphasis added). As discussed above, Swann's subcontract required it to indemnify Amberwood for any claims arising out of or connected to Swann's work, not merely those caused by Swann's negligent acts or omissions. We will not impose a causation requirement the parties did not include in their contract. *See Evans Withycombe, Inc. v. W. Innovations, Inc.*, 215 Ariz. 237, 242, ¶ 20, 159 P.3d 547, 552 (App. 2006) ("The extent of a contractual duty to indemnify 'must be determined from the contract.'" (quoting *INA Ins. Co. of N. Am. v. Valley Forge Ins. Co.*, 150 Ariz. 248, 252, 722 P.2d 975, 979 (App. 1986))).

**¶16** Swann's also contends it can only be held liable for its *pro rata* share of Amberwood's damages under the Uniform Contribution Among Tortfeasors Act ("UCATA"), which largely abolished joint and several liability. UCATA, however, does not impair Amberwood's contractual indemnity rights. *See* A.R.S. § 12-2501(F)(1) (2016) (UCATA does not "[i]mpair any right of indemnity under existing law"); *cf. State Farm Ins. Cos. v. Premier Manufactured Sys., Inc.*, 217 Ariz. 222, 228, ¶ 26, 172 P.3d 410, 416 (2007) ("[I]ndemnification is not at all inconsistent with apportionment of fault under § 12–2506.").

6

### III. Swann's Waived Its Objections to Amberwood's Alleged Failure to Provide Proper Notice of the Litigation Settlement.

**¶17** Swann's next contends Amberwood waived its indemnification rights by not giving Swann's timely notice of its settlements with the eight litigation plaintiffs.[2] Swann's raised this issue in its motion for partial summary judgment, which the trial court denied, but did not raise it in its motion for new trial. Thus, unless the issue is purely one of law, it is waived on appeal. *See John C. Lincoln Hosp. & Health Corp. v. Maricopa Cty.*, 208 Ariz. 532, 539, ¶ 19, 96 P.3d 530, 537 (App. 2004).

**¶18** Swann's contends the issue is one of law because the trial court "affirmatively found . . . that Swann's had repudiated its duty to defend 'long before the settlement at issue.'" But the trial court's explicit repudiation finding was one of fact, not law. Waiver therefore applies.

### IV. The Trial Court Did Not Abuse Its Discretion in Awarding Amberwood Defense Costs and Attorneys' Fees.

**¶19** Swann's next argues that the trial court awarded Amberwood excessive defense costs and fees. Swann's first challenges the defense costs award based on its contention that the trial court erred in denying its motion for partial summary judgment. Swann's failed to preserve this issue in its motion for new trial; accordingly, it is waived on appeal.

**¶20** Swann's also contends the trial court erred in awarding Amberwood attorneys' fees for services related to Amberwood's third-party claims against the settling subcontractors and by not allocating the fees among all subcontractors on a *pro rata* basis.

**¶21** We review the amount of a fee award for an abuse of discretion. *Modular Mining Sys., Inc. v. Jigsaw Techs., Inc.*, 221 Ariz. 515, 521, ¶ 21, 212 P.3d 853, 859 (App. 2009). We will affirm if the award has a reasonable basis even if the trial court gave no reasons for its decision. *Fulton Homes Corp. v. BBP Concrete*, 214 Ariz. 566, 569, ¶ 9, 155 P.3d 1090, 1093 (App. 2007).

**¶22** In its briefing to this court, Swann's has not shown the award lacked any reasonable basis; indeed, its arguments relative to this issue are

---

[2] As previously noted, the other ten claimants proceeded to arbitration of their claims on the merits.

cursory at best. We therefore affirm the defense costs and attorneys' fees awards.

### V. The Trial Court Did Not Abuse Its Discretion by Admitting Amberwood's Expert Evidence.

¶23 Swann's contends the trial court erred in overruling its disclosure objections to Amberwood's expert witness' testimony and list of repair costs. We will not disturb the trial court's disclosure rulings absent an abuse of discretion. *Marquez v. Ortega*, 231 Ariz. 437, 441, ¶ 14, 296 P.3d 100, 104 (App. 2013).

¶24 We first note that Swann's raised its disclosure objections at trial before Amberwood offered either the list or repair costs or the expert's testimony into evidence. The trial court declined to rule on the objections at that time but allowed Swann's to renew its objection to the list when it was offered into evidence. The trial court also stated that it would "make rulings on particular testimony" as it was presented. Swann's failed to object to any part of the expert's testimony on disclosure grounds as it was offered. The trial court thus did not err in finding Swann's waived any objections to the expert testimony.

¶25 Swann's did renew its objection to the repair costs list, which the trial court overruled. But Swann's has not shown that the trial court abused its discretion in doing so. Amberwood's expert testified that the list was a compilation of items taken from cost of repair reports prepared several years earlier that he believed Swann's was at least partially responsible for. Swann's did not rebut this testimony or offer anything to show that the substance of the list had not been previously known and timely disclosed. On this record, we therefore find no abuse of discretion.

### VI. Swann's Was Entitled to an Offset Representing Settlement Payments Amberwood Already Had Received.

¶26 In its cross-appeal, Amberwood challenges the trial court's decision to grant Swann's an offset representing the funds Amberwood received in its settlements with other subcontractors. Citing *Summers v. Gloor*, 239 Ariz. 222, 368 P.3d 930 (App. 2016), Amberwood contends it was Swann's burden to prove the offset and that Swann's offered no evidence at trial to meet that burden.

¶27 Generally, the party claiming an offset has the burden to prove it. *See, e.g., Harmony at Madrona Park Owners Ass'n v. Madison Harmony Dev., Inc.*, 253 P.3d 101, 105 (Wash. Ct. App. 2011). But here, the

parties stipulated that Amberwood had already received $479,400 in settlement funds before trial. Amberwood also does not dispute that, absent the offset, it would have received a double recovery. We therefore affirm the offset.

### VII. Attorneys' Fees on Appeal.

**¶28** Amberwood requests its attorneys' fees incurred on appeal under the subcontract, and both parties request fees under A.R.S. § 12-341.01(A) (2016). Amberwood does not cite any subcontract provision that authorizes a fee award for its express indemnity claim. We therefore deny that request.

**¶29** In our discretion, we also decline to award fees under § 12-341.01(A) to either party. *See Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 570, 694 P.2d 1181, 1184 (1985) (stating that § 12-341.01(A) does not require an award of fees to the prevailing party); *Autenreith v. Norville*, 127 Ariz. 442, 444, 662 P.2d 1, 3 (1980) (same). We will, however, award Amberwood its costs as the successful party in this appeal upon compliance with Arizona Rule of Civil Appellate Procedure 21. *See Ocean West Contractors, Inc. v. Halec Constr. Co.*, 123 Ariz. 470, 473, 600 P.2d 1102, 1105 (1979) ("The award of money is . . . an important item to consider when deciding who, in fact, did prevail. The fact that a party did not recover the full measure of relief requested does not mean that he is not the successful party. Neither does the fact that the amount of the claim is set off or reduced by counterclaim mean that the plaintiff was not the successful party") (internal citations omitted).

### CONCLUSION

**¶30** We affirm the trial court's judgment and deny Amberwood's cross-appeal.

